COMMONWEALTH *vs.* JOHN V. SCHAFFNER.

Suffolk.    February 3, 1888. — April 6, 1888.

Present : MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN,
& KNOWLTON, JJ.

*Milk — Indictment — Motion to Quash — Evidence — Election — Witness —
Credibility — Impeachment.*

A motion to quash an indictment because it "sets forth no crime or offence
known to the law," made after the impanelling of the jury, is filed too late;
nor does it assign "specifically the objection relied on," within the Pub. Sts.
c. 214, § 25.

An indictment on the St. of 1886, c. 318, § 2, alleging that the defendant had in his
"possession milk to which a certain foreign substance had been added, to wit,
annatto coloring matter," with intent unlawfully to sell the same, is sufficient
without naming the quantity.

Evidence offered at the trial of such an indictment as to two samples of milk, taken
from the defendant's possession at substantially the same time, is competent,
and the government cannot be required at the time of the offer, if ever, to elect
which sample it will rely on.

The addition of the annatto coloring matter, whether injurious to health or not, is
punishable under the statute.

Evidence that the "milk was of low grade" is competent, although it may tend to
prove another offence.

If a chemist, called as an expert by the defendant, identifies a letter written by
him nearly three years before to a third person in relation to another matter, but
assumed at the trial to contain a suggestion derogatory to his character, the
letter is not admissible to impeach his credit.

INDICTMENT on the St. of 1886, c. 318, § 2, alleging that "the jurors for the Commonwealth of Massachusetts, on their oath present, that John V. Schaffner, of Boston aforesaid, on the fifteenth day of May, in the year of our Lord one thousand eight hundred and eighty-seven, at Boston aforesaid, unlawfully did have in his possession milk to which a certain foreign substance had been added, to wit, annatto coloring matter, a further description of which said jurors cannot give, with intent then and there unlawfully to sell the said milk within this Commonwealth."

In the Superior Court, after the jury was impanelled and sworn, the defendant moved to quash the indictment for the following reasons : " 1. The indictment sets forth and describes no crime or offence known to the law. 2. A complaint for the same cause, and founded on the same identical facts, was sworn out against this defendant, and has been disposed of in this court." *Bacon,* J., overruled the motion.

At the trial, it appeared that two samples of milk were taken from the defendant's wagon, on the same day, and substantially at the same time. The defendant requested the judge to require the government to elect as to which sample it should rely upon ; but the judge refused to comply with this request, and admitted evidence as to both samples, against the defendant's objection.

A milk inspector, called by the government, who testified that, upon testing the milk, he found it to contain some annatto coloring matter, was asked, on cross-examination, whether the quantity found would be injurious to health, but, upon objection by the government, was not permitted to answer. A chemist, called by the government, testified that he had analyzed both the samples taken to ascertain the standard quality of the milk, and was asked to state what he found the quality of the milk to be, and replied, under the defendant's objection, that " the milk was of a low grade."

One Bowker, called by the defendant as an expert, was asked, on cross-examination, if he wrote a certain letter, to which he replied in the affirmative. To impeach the testimony of this witness the government was permitted to introduce in evidence, against the defendant's objection, a letter, addressed by the

witness to one Tarbell, in relation to the coloring of vinegar, which was as follows: "Office of Dr. H. L. Bowker & Co., Manufacturing Chemists, 295 and 297 Franklin Street. Dr. H. L. Bowker, State Assayer for Massachusetts. Boston, July 17, 1884. Mr. E. Tarbell: Dear Sir, — Your vinegar tests am't $4\frac{47}{100}$ per cent of acetic acid, or 30 grains soda test. The new law requires 5 per cent, and nothing short. You can use a little of our vinegar acid, and fetch it up at small expense. Yours, H. L. Bowker & Co."

After the evidence was all in, the defendant asked the judge to rule that the indictment was not sufficient to warrant a verdict of guilty, because it did not describe or set forth any crime or offence known to the law; but the judge ruled that it was sufficient, and so instructed the jury. The jury returned a verdict of guilty, and the defendant alleged exceptions.

*J. A. McGeough*, for the defendant.

*A. J. Waterman*, Attorney General, for the Commonwealth.

C. ALLEN, J. 1. The motion to quash was filed too late, so far as any informalities in the indictment are concerned; nor does it set forth specifically the objections relied on in the first cause assigned. Pub. Sts. c. 214, § 25. *Commonwealth* v. *Fitchburg Railroad*, 126 Mass. 472. *Commonwealth* v. *Murray*, 135 Mass. 530. The second cause assigned in the motion to quash was not relied on in the argument.

2. The objection that, apart from mere informality, the indictment does not set forth an offence known to the law, cannot be sustained. The St. of 1886, c. 318, § 2, includes as an offence, and makes punishable, the having in possession, with intent to sell, milk to which water or any foreign substance has been added. The indictment follows this language. It was not necessary to allege the quantity; *Commonwealth* v. *Conant*, 6 Gray, 482; and if it were, the objection on this ground would be merely formal, and came too late, and was not specifically set forth.

3. It was clearly competent for the court to admit evidence as to both samples, and it was not necessary at that stage of the case, if ever, to require the government to elect which sample it would rely on. *Commonwealth* v. *Bennett*, 118 Mass. 443. *Commonwealth* v. *Pratt*, 137 Mass. 98.

4. It was immaterial whether the addition of the annatto coloring matter was or was not injurious to health. The addition of pure water is punishable under the statute.

5. It was competent for the chemist to testify that the milk was of low grade. Testimony having been introduced to show that a particular foreign substance had been added, it was proper to show just what the milk was, independently of that. The defendant contends that, as it is a separate offence under the St. of 1886, c. 318, § 2, to have in possession, with intent to sell the same, "milk not of good standard quality," this testimony must have tended to prejudice the jury, and was on that account inadmissible. But all evidence relevant and material to prove the offence which is charged is competent, though it may also show the commission of another offence. *Commonwealth* v. *Choate,* 105 Mass. 451, 457, 458. *Commonwealth* v. *Scott,* 123 Mass. 222, 235.*

6. The admission of the letter of the witness Bowker was erroneous. We are aware that in England and in some of the United States this latitude of cross-examination has sometimes been allowed; though not without protests that the practice ought to be restricted. Taylor, Ev. §§ 1459–1461. *People* v. *Irving,* 95 N. Y. 541. Stephen, Ev. (Chase's Am. ed.) 225, 277. 1 Whart. Ev. §§ 541, 542. In Massachusetts, the rule has been that a witness cannot be asked on cross-examination, in order to affect his credibility, about his part in transactions irrelevant to the issue on trial. *Holbrook* v. *Dow,* 12 Gray, 357. *Smith* v. *Castles,* 1 Gray, 108, 112. *Commonwealth* v. *Shaw,* 4 Cush. 593. See also *Commonwealth* v. *Quin,* 5 Gray, 478; *Commonwealth* v. *Mason,* 105 Mass. 163, 168. The case of *Commonwealth* v. *Hersey,* 2 Allen, 173, which is apparently in favor of a larger liberty, was not so in reality. The case is too briefly reported on this point. The indictment was for poisoning by strychnine a woman who was pregnant with child, under pretence that it would produce a miscarriage. A reference to the full report of the trial (Trial of Hersey, 122–126) shows that the witness Morrill, called by the government, testified in his direct examination, that he was practising medicine in Boston, though not

---

* See also *Commonwealth* v. *Robinson, post,* p. 571.

regularly educated as a physician; that the prisoner came to his office twice, at times near enough to the time of the alleged poisoning to be relevant and material, and said he had been looking over the newspapers and had seen Morrill's advertisements of medicines for females; that conversation then ensued in respect to medicines and operations for procuring abortion, and the prices and danger thereof; after which the prisoner, at the last interview, asked if Morrill would sell him some strychnine. On cross-examination, the witness admitted certain medical advertisements, published in Boston newspapers, which were shown to him, to be his; and the advertisements were allowed to be read to the jury, for the purpose of showing the nature of his medical practice, and affecting his credit; and the report of the trial adds, to show "that the statements there made and the testimony of the witness were contradictory." Even if not directly contradictory, the advertisements were properly admitted in explanation of his habits, occupation, and way of life, and in illustration of his character, especially in view of his testimony in chief. *Hathaway* v. *Crocker*, 7 Met. 262, 266.

In the present case, the letter of Bowker was written nearly three years before the matters testified to by him, and had no relation thereto. It appears to have been assumed on all hands, at the trial, that the suggestion made in the letter was derogatory to his character. The course of the trial afforded him no opportunity to object, or to explain it. It might be, that the proper effect of the letter could only be determined by further evidence, to show whether his suggestion in the letter would or would not be dishonest or discreditable. The letter was admitted in order to impeach his testimony, and it may have had that effect with the jury. The case thus falls within the rule which has prevailed in this Commonwealth, and we are satisfied that both witnesses and parties ought to be protected from being obliged to encounter such collateral charges. For this reason only, the entry must be,

*Exceptions sustained.*