COMMONWEALTH *vs.* WILLIAM M. HOGAN.

Middlesex.     May 19, 1924. — June 13, 1924.

Present: RUGG, C.J., BRALEY, DECOURCY, CARROLL, & WAIT, JJ.

*Bribery. Municipal Corporations,* Officers and agents. *Jurisdiction. Pleading, Criminal,* Indictment. *Practice, Criminal,* New trial, Arrest of judgment.

A municipal officer of a city, charged in an indictment under G. L. c. 268, § 8, as amended by St. 1923, c. 451, with requesting a gift, accepting a gift, and accepting a promise to make a gift in violation of the provisions of that statute, did not file a demurrer to the indictment or a motion that it be quashed before jurors were sworn at the trial, but pleaded not guilty. There then was a trial on the indictment as presented and the defendant was found guilty. At the argument of a motion for a new trial on the ground that the verdict was against the weight of the evidence and against the law, the defendant for the first time asked for a ruling that the indictment was defective in that it did not sufficiently identify the offence charged so as to protect the defendant in case of a subsequent indictment for the same offence, and, at the hearing in this court of exceptions saved at the trial and to a denial of a motion for a new trial, argued that the indictment was bad for duplicity and that the defendant had raised a question as to the jurisdiction of the court. *Held,* that the objection to the form of the indictment came too late and that the exception, so far as it was based on that ground, must be overruled.

At the trial of an indictment charging a member of the city council of Cambridge with violation of G. L. c. 268, § 8, as amended by St. 1923, c. 451, there was evidence tending to show that the owner of a building, who desired to have it removed, petitioned the city council for

permission to make the removal; that a public hearing was held at which no one appeared in opposition and that on the same date as the hearing an order was adopted authorizing the issuance of the license; that, while the petition was pending, the owner of the building and another person interviewed the defendant at his house in the county of Plymouth, where the defendant solicited and requested money from the owner in consideration of his efforts and vote in favor of the granting of the petition; that on the day of the meeting the person assisting the owner met the defendant in a corridor of the city hall and told him that he had $300 toward expenses; that the defendant attended the meeting and submitted a motion.for suspension of rules so that prompt action could be taken; that on the motion for the permit he voted in the negative so that he might move for reconsideration and that his motion for reconsideration did not prevail, the effect of which was that the order could be presented to the mayor for approval the following day instead of waiting thirty-six hours; that the following morning the person assisting the owner met the defendant and paid him $300 and received from the defendant the permit, which had been approved by the mayor. *Held*, that a verdict of guilty was warranted.

At the trial of the indictment above described, the person who was assisting the owner was called as a witness for the Commonwealth and, cautioned by the court, refused to answer certain questions on the ground that they might tend to incriminate him. The Commonwealth at that point rested its case and the defendant moved that a verdict of not guilty be ordered. The trial judge excused the jury. After a conference between the witness and the district attorney, the witness waived his rights, having been promised immunity by the district attorney, and thereafter testified at length. The defendant objected and excepted to the reopening of the case. *Held*, that the action of the trial judge showed no error.

It is too late at the arguing of a motion for a new trial, after a defendant has been found guilty on a charge in an indictment, for the first time to contend and ask for a ruling that " the indictment was fatally defective in that it did not sufficiently identify the offence charged as to protect the defendant in case of a subsequent indictment for the same offence."

At the trial of an indictment charging a member of the city council of the city of Cambridge with violation of G. L. c. 268, § 8, as amended by St. 1923, c. 451, in that at Cambridge in the county of Middlesex he corruptly accepted or requested a gift or gratuity or a promise to make a gift under an agreement that his vote should be given on a particular side of a question which was to be brought before him in his official capacity, the defendant pleaded not guilty. While there was evidence of acceptance of money given and received in the county of Middlesex in violation of the statute, the evidence as to solicitation showed only an act in the county of Plymouth. The defendant did not ask before the case went to the jury for a ruling that for want of jurisdiction he could not be convicted of solicitation. The judge charged the jury, " If the Commonwealth has satisfied you, beyond a reasonable doubt, of the truth of what it sets out in that indictment, then your verdict should be guilty." The defendant did not except to this instruction.

The defendant was found " guilty as charged in the indictment," and moved in arrest of judgment, on the ground " that there was no evidence that the defendant made any request as alleged in said indictment within the county of Middlesex." The motion was denied. *Held,* that

(1) The offence described in the statute was one which might be committed either by the requesting or by the accepting of a bribe, and, whether the defendant did one or more of those acts, he was subject on conviction to one punishment;

(2) Upon the record no error was shown.

INDICTMENT, found and returned on September 13, 1923, charging a violation of G. L. c. 268, § 8, as amended by St. 1923, c. 451.

In the Superior Court, the defendant was tried before *Sisk,* J.

One John H. Reagan, called as a witness by the Commonwealth, was cautioned by the trial judge " that he was not obliged to answer any questions which would tend to incriminate himself. The witness said he did not desire to waive any immunity against self-incrimination. The district attorney cautioned the witness that he should indicate questions which he did not care to answer." After some testimony, the witness was asked whether he would relate a conversation he had with the defendant Hogan out of hearing off the piazza at the defendant's house at Nantasket, and stated that he declined to answer on the ground that his answer might incriminate him. The Commonwealth then rested its case with a reservation not material. The defendant moved that a verdict of not guilty be ordered. The trial judge excused the jury.

After a conference between the witness and the district attorney, the district attorney informed the trial judge that the witness was willing to testify, having been granted immunity. The jury were recalled and the witness, stating that he was willing to waive his rights, having been promised immunity by the district attorney, testified further and at length. The defendant objected to the reopening of the case and his exception was saved.

Other material evidence is described in the opinion. The defendant asked for the following rulings:

" 1. On all the evidence the jury should acquit the defendant.

" 2. There is not sufficient evidence to warrant a conviction.

" 3. It is proper for this jury to acquit the defendant unless they find that the witness Reagan, who is a self-confessed accomplice to the crime charged, has been corroborated by material circumstances tending to prove that he actually paid the defendant the $300 for the purpose alleged.

" 4. While it is competent for the jury if they believe Reagan beyond a reasonable doubt to convict the defendant, yet being an accomplice the source of evidence is so corrupt that it is always looked upon with suspicion and jealousy and is deemed unsafe to rely upon without confirmation.

" 5. The corroborating facts must be such as tend to connect the defendant with the offense charged.

" 6. Reagan must be corroborated in some point tending to prove the defendant's guilt.

" 7. No material fact has been shown to corroborate Reagan's testimony that he paid $300 to the defendant for the purpose alleged.

" 8. That Hyde and Reagan are self-confessed accomplices to the offense charged in the indictment.

" 9. That the testimony of Hyde should not be treated by the jury as corroborating Reagan's nor Reagan's of Hyde's.

" 10. Evidence of conversations by and between Hyde and Reagan not in the presence and hearing of the defendant are not to be considered by the jury as tending to prove the defendant guilty of the offense charged. No conspiracy is charged.

" 11. Testimony of the whereabouts of Hyde and of Reagan or of either of them when not in the presence of the defendant is wholly immaterial as tending to prove that Reagan paid the defendant $300 for the purpose alleged.

" 12. Testimony of what Hyde did when not in the presence of the defendant is wholly immaterial as tending to prove that Reagan paid Hogan $300 for the purpose alleged.

" 13. Testimony of what Reagan did when not in the

presence of the defendant is wholly immaterial as tending to prove that Reagan paid Hogan $300 for the purpose alleged.

" 14. Testimony of what Hyde and Reagan said when not in the presence of the defendant is wholly immaterial as tending to prove that Reagan paid Hogan $300 for the purpose alleged.

" 15. None of the testimony of Hyde has any tendency to prove any facts connecting the defendant with the crime charged or any participation of the defendant with Reagan at any stage of the transaction or would have been competent independent evidence against the defendant for any purpose.

" 16. The testimony of Hyde and Reagan relating to facts not shown to have occurred in the presence of, or to have been known to, the defendant is immaterial, incompetent and not admissible to corroborate Reagan that he paid the defendant any money for the purpose charged in the indictment or to corroborate him on any material point."

The rulings were refused.

During the argument to the jury defendant's counsel emphasized the point that there was not sufficient evidence to convict the defendant for requesting a bribe. The district attorney strenuously argued that there was sufficient evidence to convict the defendant for requesting a bribe and for accepting the bribe; that the jury could convict on either and that the district attorney did not care which.

The verdict of the jury was " guilty as charged in the indictment."

The defendant moved for a new trial on the grounds (1) that the verdict was against the evidence, (2) that the verdict was against the weight of the evidence, and (3) that the verdict was against the law. At the argument of the motion, " the defendant requested the trial judge to rule that the indictment was fatally defective in that it did not sufficiently identify the offence charged as to protect the defendant in case of a subsequent indictment for the same offence." The ruling was refused.

The defendant then filed a motion in arrest of judgment, which was based on the same ground as the motion for a

new trial and also on the ground that "there was no evidence that the defendant made any request as alleged in said indictment within the county of Middlesex." After a hearing, the motion was denied.

The defendant alleged exceptions. In this court the defendant's counsel, among other arguments, contended as follows:

"The form of the indictment is bad for duplicity. It may be answered that the defective indictment was waived or cured by the plea of not guilty. The defendant's objection, however, is more fundamental; it raises the question as to the jurisdiction of the court.

"There is no evidence of any request having been made in Middlesex County. On all the evidence the requesting was done in Plymouth County. Under the statute this objection could not have been anticipated. G. L. c. 277, § 20. The government's specifications did not disclose any want of jurisdiction. The evidence of the government showed two different and distinct offenses, committed in different places and at different times."

The case was submitted on briefs.

*J. J. Higgins*, for the defendant.

*A. K. Reading*, District Attorney, & *R. T. Bushnell*, Assistant District Attorney, for the Commonwealth.

BRALEY, J. It is provided by G. L. c. 268, § 8, as amended by c. 451 of the Acts of 1923, that "A legislative, executive, judicial, county or municipal officer who corruptly requests or accepts a gift or gratuity or a promise to make a gift or to do an act beneficial to him, under an agreement or with an understanding that his vote, opinion or judgment shall be given in any particular manner, or upon a particular side of any question, cause or proceeding, which is or may be by law brought before him in his official capacity, or as a consideration for any speech, work or service in connection therewith, or that, in such capacity, he shall make any particular nomination or appointment, shall forfeit his office, be forever disqualified to hold any public office, trust or appointment under the Constitution or laws of the Commonwealth, and be punished by imprisonment in the State

Prison for not more than ten years or by a fine of not more than five thousand dollars and imprisonment in jail for not more than two years; and an executive, county other than judicial, or municipal officer who is finally convicted of committing, in connection with the performance of the duties of such office, the crime of larceny, embezzlement or obtaining money under false pretences shall, in addition to the penalty imposed by law for the punishment of such crime, forfeit his office and be forever disqualified to hold any public office, trust or appointment as aforesaid." See Constitution of Massachusetts, c. 6, art. II. The material part of the indictment, which contains only one count, charges, " That William N. [M.?] Hogan at Cambridge in the county of Middlesex aforesaid, did, being a municipal officer of Cambridge aforesaid, corruptly request or accept a gift or gratuity or a promise to make a gift or to do an act beneficial to him, under an agreement or with an understanding that his vote, opinion or judgment should be given in a particular matter, or upon a particular side of a question, cause or proceeding, which was or may have been by law brought before him in his official capacity, or as a consideration for any speech, work or service in connection therewith."

The defendant, having been convicted, contends, that the indictment is bad for duplicity, because it charges that he requested a gift; that he accepted a gift; and that he accepted a promise to make a gift. But, no demurrer or motion to quash having been filed before the jurors were sworn, the case stood for trial on the indictment as presented by the grand jury. G. L. c. 278, § 17. The defendant, however, moved for a bill of particulars, which was furnished, and the trial proceeded on the merits. G. L. c. 277, § 40.

It is next urged, that a verdict should have been directed for the defendant. The credibility of the witnesses was for the jury, and the defendant's position must rest on the contention that there was no evidence on which the jury could find their verdict of " guilty as charged in the indictment." The uncontradicted testimony tended to show, that one Abe R. Hyde, owner of a building on one of the streets of the city, desired to have it moved to a vacant lot opposite the

old location, and employed Soley and Blair, Inc., building movers, to do the work. But, a license being necessary, he petitioned the city council on June 26, 1923, for permission to make the removal. G. L. c. 39, § 1; c. 85, § 18. A public hearing was given on July 10, 1923, at which no one appeared in opposition, and on the same date an order was adopted authorizing the superintendent of streets to issue a license to Soley and Blair, Inc., to remove the building in accordance with the petition. There was evidence, and the jury could find, that, while the petition was pending, Hyde and one Reagan, whom Hyde asked to assist him in getting the assent of the defendant to, and aid in the passage of the order, had interviews with the defendant at Nantasket in the town of Hull in the county of Plymouth, in which the defendant solicited and requested money from Hyde in consideration of the defendant's efforts and vote in favor of granting the petition. *Commonwealth* v. *Howard,* 205 Mass. 128, 144. It also could be found on the evidence of Reagan that on the night of July 10, 1923, he met the defendant in the corridor of the city hall in Cambridge before the meeting of the council, and told him that he had $300 toward expenses. The defendant attended the meeting, and submitted a motion for suspension of the rules so that prompt action could be taken on the petition. The defendant voted in the negative, and after the order had been passed, moved for a reconsideration which did not prevail. The effect of this as explained by the city clerk, a witness for the Commonwealth, was, that the order could be presented to the mayor for his approval on the following day. But if reconsideration had not been moved, the order would have to remain in the office of the city clerk for thirty-six hours after the meeting. The following morning Reagan met the defendant by appointment at Cambridge, and gave to him $300, which had been put in his hands for that purpose by Hyde, and received from the defendant the permit or license, which had been approved by the mayor, and gave it to a son of Hyde. It is true that William S. Soley of Soley and Blair, Inc., testified, that the permit which he received at the office of Hyde was a certified copy of the order of the city council authorizing the moving of the

building. But the jury could say, that the paper received by Reagan was the certified copy afterwards delivered to the mover. It is submitted by the defendant, that Reagan really sought and obtained the money for himself, and that upon discovery of his deceit endeavored to exculpate himself, by saying, that he received the money for, and gave it to the defendant. But the real nature of the transactions were questions of fact on all the evidence.

If the jury believed the evidence of Reagan and of Hyde, the defendant's guilt was manifest, not only of soliciting, but of receiving a bribe. The first and second requests could not have been given.

The exceptions to the reopening of the case after the Commonwealth had rested, and to the admission of evidence, present no error of law and the refusal to give the third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth and sixteenth requests, in so far as not covered by the instructions, was right.

The defendant moved for a new trial because the verdict was against the evidence, the weight of the evidence, and the law. It is argued, that, instead of being refused, a new trial should have been granted. The defendant at the hearing on the motion requested the trial judge to rule that " the indictment was fatally defective in that it did not sufficiently identify the offence charged as to protect the defendant in case of a subsequent indictment for the same offence." The granting of the motion as framed was discretionary with the court, and the request could not be given. The question of the alleged insufficiency of the indictment should have been raised at the trial.

The defendant after sentence also moved in arrest of judgment, on the ground " that there was no evidence that the defendant made any request as alleged in said indictment within the county of Middlesex." G. L. c. 277, § 20; c. 278, § 34. The motion was denied, and the defendant excepted. The verdict was general, and the judge charged the jury, " If the Commonwealth has satisfied you, beyond a reasonable doubt, of the truth of what it sets out in that indictment,

then your verdict should be guilty." The defendant did not ask for a ruling before the case went to the jury, that for want of jurisdiction he could not be convicted of solicitation, nor did he except to this instruction. The court undoubtedly had jurisdiction of the acceptance of the money given and received at Cambridge in consideration of the defendant's favorable action in the city council. The offence is an offence which may be committed in either of the acts charged, and whether singly or together subjects the defendant on conviction to one punishment. *Stevens* v. *Commonwealth,* 6 Met. 241, 242. *Commonwealth* v. *Brown,* 14 Gray, 419. *Commonwealth* v. *Curtis,* 9 Allen, 266. *Commonwealth* v. *Carney,* 153 Mass. 444. *Commonwealth* v. *Kronick,* 196 Mass. 286. *Commonwealth* v. *Wotton,* 201 Mass. 81. *Commonwealth* v. *King,* 202 Mass. 379, 394. *Commonwealth* v. *Macloon,* 101 Mass. 1, 6. *Commonwealth* v. *White,* 123 Mass. 430, 433, 434. *Commonwealth* v. *Pettes,* 114. Mass. 307, 310, 311.

The defendant having failed to show any reversible error at the trial, the entry must be

*Exceptions overruled.*